UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,   ) | | |
| ) | Case No. 4:15CR00230 JAR (JMB) | |
| Plaintiff,   ) | | |
| ) | Date: | January 20, 2016 |
| v.   ) | Time: | 9:30 a.m. |
| ) | Courtroom: | 15 South |
| JACOBI R. TEMPLE,   ) | | |
| ) | | |
| Defendant.   ) | | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PRETRIAL DISCOVERY AND PREAUTHORIZATION DISCOVERY WITH POINTS AND AUTHORITIES**

Several points made by the prosecution in its response merit reply below before hearing on the pretrial motion for discovery and preauthorization discovery to be held on January 20, 2016.

    **I.**    **Mr. Temple Has a Right to Discovery Based on the Constitution, Statute and Rules Relevant to Capital Trials**

        A.  The Government's Rejection of Modern *Brady* Law Requires Judicial Correction

The government's response sets out a view of law that is incomplete and at times blatantly wrong. It succeeds in communicating that the prosecution in this case has not complied and will not comply with the most basic rules of disclosure unless and until this Court corrects the government's misconceptions and orders it to abide by the law. At times, the prosecution has relied upon the Ninth Circuit for its rationale in not disclosing evidence to the defendant. However, the Court of Appeals for the Ninth Circuit has cautioned that "[d]iscovery decisions made by prosecutors must always be made with one eye on successful prosecution and the other on the potential for reversible error for failure to disclose information". *United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007).

1

It is somewhat anachronistic to state, as the government does, that "criminal defendants do not have a general constitutional right to discovery" in a federal case.  Govt. Resp. Def. Temple's Disc. Mot. Doc. 89 at p. 9 ("Resp.") or at least a federal capital case.  The government has chosen to ignore every Supreme Court case on this subject.

It is clear that prosecutors have a duty imposed by the Due Process Clause of the Fifth Amendment to produce to the defense, **prior to trial**, all favorable evidence held by them or law enforcement.  "Under long standing principles of constitutional due process, information in the possession of the prosecutor and his investigating officers that is helpful to the defendant, including evidence that might tend to impeach a government witness, must be disclosed to the defendant **prior to trial**." *United States v. Price*, 566 F.3d 900, 903 (9th Cir. 2009)(emphasis added).

The Supreme Court "has rejected any…distinction between impeachment evidence and exculpatory evidence" for purposes of the prosecution's duty.  *United States v. Bagley*, 473 U.S. 667, 676 (1985); *see also Giglio v. United States*, 405 U.S. 150, 154 (1972).

The Supreme Court has long held that prosecutors have an "affirmative duty to disclose evidence favorable to the defense".  *Kyles v. Whitley*, 514 U.S. 419, 432 (1995).  The scope of favorable evidence includes everything that is "material either to guilt or to punishment".  *Brady v. Maryland*, 373 U.S. 83, 87 (1967).  Because knowledge of all evidence in the possession of the government, and any state agency working with the prosecution, is attributed to the prosecutor, *Giglio*, 405 U.S. at 154, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police".  *Kyles*, 514 U.S. at 437.

B. <u>Congress, the Rules Committee and the Supreme Court Have Created a Series of Laws That Unambiguously Require and Give Capital Defendants an Expectation of Disclosure of Information Prior to Trial</u>

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure entitles a criminal defendant to discovery necessary to prepare a defense.

The government's position that Rule 12(b)(4)(B) is "not a discovery device" is a position inconsistent with the Advisory Committee Notes regarding Rule 12. (*See* Resp. p. 3). As Rule 12 Advisory Committee Notes reference, in *United States v. Sebastian*, 497 F.2d 1267 (2nd Cir. 1974), "it can be argued most persuasively that the case for pretrial disclosure is strongest in the framework of a suppression hearing. Since findings at such a hearing as to the admissibility of challenged evidence will often determine the result at trial and, at least in the case of Fourth Amendment suppression motions, cannot be relitigated later before the trier of fact, pretrial production of the statements of witnesses would aid defense counsel's impeachment efforts at perhaps the most crucial point in the case."

Later in the Advisory Committee Notes, it is noted that "Rule 12(b)(4) is composed of what is currently Rule 12(d). The Committee believe that the provision, which addresses the government's requirement to disclose discoverable information for the purposes of facilitating timely defense objections and motions, was more appropriately associated with pretrial motions specified in Rule 12(b)(3).

Title 18 Section 3593 requires the prosecution to provide pretrial notice of aggravating circumstances it intends to rely upon.[1]

Many of the government's objections to Mr. Temple's discovery requests are based upon the proposition that disclosure of such evidence is not authorized or required by Rule 16. (*See*

---

[1] Although informal oral representations have been made to defense counsel by the Assistant United States Attorney of potential aggravating circumstances, no formal pleading or notice has been given at the time of this writing.

3

Resp. at p. 4-5, 9).  However, "Rule 16 establishes the **minimum** amount of discovery to which the parties are entitled.  It is not intended to limit the judge's discretion to order broader discovery in appropriate cases."  Advisory Committee Note to Fed.R.Crim.P. 16 (emphasis added).  Courts have also held that "disputes should be resolved in the defendant's favor, for the language and spirit of the rule are designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case."  *United States v. Karake*, 281 F.Supp.2d 302, 306 (2003).  Furthermore, the court in *Karake* held that such principles hold especially true in capital cases, given the nature and gravity of the proceedings.  *Id.*  Thus, the Court should find that Rule 16 does not preclude disclosure of the evidence that Mr. Temple has requested.

The items sought in Mr. Temple's discovery motion (Doc. 84) meet the requirements of Fed.R.Crim.P. 12 and 16(a)(1)(E) as viewed under current law and under *Brady* and its progeny.

The Due Process Clause also requires that a capital defendant have notice of, and an opportunity to respond to, any information that may be considered in capital sentencing proceeding.  *Gardner v. Florida*, 430 U.S. 349, 362 (1977).  Title 18, Section 3005, entitles a capital defendant to "make any proof he can produce by lawful means".  The Supreme Court has held that a defense attorney provides constitutionally deficient representation if he fails to seek, and make appropriate, lawful use of the discovery through applicable statutes and rules.  *See Kimmelman v. Morrison*, 477 U.S. 365 (1986).  The Supreme Court has repeatedly held that capital defense attorneys, in order to meet the Sixth Amendment standards for "counsel", must meet the expectations of the profession codified in the American Bar Association's Standards for Criminal Justice ("ABA Standards") and Guidelines of the Appointment and Performance of

4

Counsel in Death Penalty Cases ("ABA Guidelines"), in particular where they require defense counsel to obtain and independently investigate information from government sources. *See Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (trial counsel ineffective for failing to investigate court file and criminal records related to defendant); *Wiggins v. Smith*, 539 U.S. 510, 522, 524 (2003) (trial counsel ineffective for failing to obtain report on defendant suffering sexual abuse); *Williams v. Taylor*, 529 U.S. 362, 396 (2000) (trial counsel ineffective for *inter alia* failing to obtain social service report on condition in defendant's childhood home).

Whether or not one calls the rights and expectations conferred by this vast body of law "discovery", and whether one analyzes these rules as creating a liberty interest under the Fifth Amendment, or under the Sixth and Eighth Amendments, this Court cannot conduct a capital trial that will meet constitutional standards unless it rejects the government's views and grants the defense access to evidence and information necessary to prepare its case. The government simply pretends the rules, statutes and cases do not exist, or do not have the meaning recognized by the Supreme Court.

The controlling law requires the government to make complete, pretrial discovery of any evidence, or potential evidence, that the government knows about or could know about through the exercise of due diligence.

    C. *Brady* and its Progeny Require Pretrial Disclosure as a Matter of Due Process

First, the government contends *Brady* "…is not a rule entitling Temple to any pretrial discovery." (Resp. at p. 7). This claim is made in various forms throughout the Response. At 8 and 13 which notes "…Temple is not entitled to *Brady* material prior to trial."

The government's position is untenable in light of *United States v. Bagley*, 437 U.S. 667 (1985), and *Kyles v. Whitley*, 514 U.S. 419 (1985). The Response contains no mention of any

5

Supreme Court decision on *Brady* that supports the government's position.  In *Bagley*, the Supreme Court agreed that "prosecutor's failure to respond fully to a *Brady* request may impair the adversary process" by misleading the defense to "abandon lines of independent investigation, defenses or trial strategies that it otherwise would have pursued".  473 U.S. at 682-83.  *See also United States v. McVeigh*, 923 F.Supp. 1310, 1315 (D. Colo 1996) ("purpose of the *Brady* duty of disclosure is to give defendants a fair opportunity to prepare their defense **well in advance of trial**") (emphasis added).

The Supreme Court has also made clear that the prosecutor must assess the materiality of the favorable evidence in his possession prior to trial.  *Kyles*, 514 U.S. at 437-39 (rejecting state's argument that prosecutors should be excused from disclosure obligations because police did not reveal information to him later; rejecting argument that the prosecution should be given leeway about "exactly what might become important later on" at trial by saying "government simply cannot avoid responsibility for knowing when the suppression of evidence has come to portend such an effect on the trial's outcome as to destroy confidence in its result" "[T]he prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of **all** such evidence and make disclosure when the point of "reasonable probability" is reached.  *Id*. 514 U.S. at 437 (emphasis added).  The government's suggestion that prosecutors may reach the point of materiality and yet withhold impeachment evidence until a witness testifies is incompatible with (a) the understanding that *Brady*  requires pretrial disclosure,[2] (b) the rule that all *Brady* material must be treated equally,

---

[2] It is far too late for the government to pretend *Brady* imposes no or limited pretrial obligations.  The government's own brief in *Bagley* acknowledged that pretrial disclosures were required and even argued for a materiality test based on the risk that incomplete pretrial disclosures might have undesirable consequences for the defense pretrial. *Bagley*, 473 U.S. at 683 (citing brief for United States).

6

and (c) the requirement that all favorable evidence be disclosed once its cumulatively becomes material.

To the extent the cases the government relies upon purport to elevate the timing provisions of the Jencks Act, 18 U.S.C. § 3500, above the requirements of *Brady*, those cases must be considered overruled or in error. As already noted, it has been recognized that the duty to make pretrial disclosures is based on "longstanding principles of constitutional due process". It is illogical to propose that a statute enacted in 1957 overrules the requirements of due process as set out in cases decided first in *Brady* (1963) and modified and reaffirmed repeatedly since then.[3]

This Court should urge the government to follow this advice:

> "[T]he…materiality standard usually associated with *Brady* ... should not be applied to pretrial discovery of exculpatory materials.... [J]ust because a prosecutor's failure to disclose evidence does not violate a defendant's due process rights does not mean that the failure to disclose is proper... [T]he absence of prejudice to the defendant does not condone the prosecutor's suppression of exculpatory evidence... [Rather,] the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses... [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made.... [T]he government [should therefore] disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence."

*United States v. Acosta*, 357 F.Supp.2d 1228, 1239-40 (D. Nev. 2005) (emphasis added) (citing *United States v. Sudikoff,* 36 F. Supp. 2d 1196 (C.D. Cal. 1999)).

> D. The Prosecutors In This Case Have a Duty to Seek Out Evidence Favorable to the Defense

---

[3] *See United States v. McVeigh*, 923 F.Supp. 1310, 1315 (D. Colo 1996) ("court is persuaded by the reasoning of the court's holding that *Brady* obligations are not altered or modified by the fact that the information is contained in witness statements or grand jury testimony. *United States v. Starusko*, 729 F.2d 256, 265 (3rd Cir. 1984)"); *United States v. Beckford*, 962 F.Supp. 780, 793 (E.D. Va. 1997).

The Government makes the shocking claim that the "prosecution does not violate *Brady* by not discovering and disclosing the information." Resp. at p. 8 citing *United States v. Jones*, 34 F.3d 596, 599 (8th Cir. 1994).  The Supreme Court of the United States says exactly the opposite. To wit: "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf, including the police." *Kyles*, supra, 514 U.S. at 438 (1995). See also *Banks v. Dretke*, 540 U.S. 668, 696 (2004) ("A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."), *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (*Brady* "rule encompasses evidence 'known only to police investigators and not to the prosecutor'") (quoting *Kyles*, 514 U.S. at 438); *United States v. Price*, 566 F.3d 900, 903 (9th Cir. 2009) (finding it clear prosecutor failed in his duty to learn about favorable evidence known to police and quoting *Kyles*); see also *Id*., 566 F.3d at 910 (finding "prosecutor's performance in this regard is troubling, and may, upon remand, warrant further inquiry by the district judge").

The prosecutor's position before this Court has been condemned as the "ostrich defense." See *United States v. Burnside*, 824 F. Supp. 1215, 1256 (N.D. Ill. 1993).

The Supreme Court believed that the materiality standard of *Bagley* and the statements in *Kyles* about prosecutors' affirmative duties to seek out and disclose exculpatory material would create an incentive for more disclosure.  *Kyles*, 514 U.S. at 439 ("This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence."), citing *United States v. Agurs*, 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure.").  This is acknowledged by the attorney General's office.  David W. Ogden, Deputy Attorney General, in his memorandum for the department prosecutors:  Guidance for Prosecutors Regarding Criminal Discovery (01/04/2010),

8

citing USA&M § 9-5.001 stated "Member of the prosecution team include federal, state and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against a defendant."

> E. The Government's Reliance on *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) for the Tenet That USA&M Death Penalty Protocol Does Not Authorize Temple's Discovery Request is Misplaced

The holding in *Fernandez* was simply that neither the "death penalty memorandum" nor the "prosecution memorandum" were subject to disclosure because, "[a]ssuming without deciding the death penalty authorization process is a 'critical state', defendant still would not be entitled to the death penalty valuation form and the prosecution's memorandum because these documents were protected by the deliberative process and work product privileges and these privileges apply during 'critical states'". *United States v. Fernandez*, 231 F.3d 1240, 1248 (9th Cir. 2000).  Counsel for Temple seeks neither the death penalty form nor the prosecution's memorandum; rather counsel seeks the underlying evidence which is discoverable.  The prosecution reads *Fernandez* too broadly as Fernandez does not hold the prosecution can shield evidence (statements or testimony) from disclosure simply by summarizing the same in work product documents—as the Court ruled in *United States v. Ortiz*, ___ F.3d ___, ___ (2012 WL 53795512, p. 4 (N.D. Ca 2012)) "The defense does not appear to seek information about the government's deliberative process.  It does not ask why the government is making its decision and seeks only the evidence (motives, victim's conduct and so forth) relevant to those decisions. …Information about the government's deliberative process is not discoverable…The evidence that the defendant seeks (as opposed to information about the deliberations) is discoverable."

The government also claims information related to any consideration given to government witnesses is covered by the Jencks Act.  (Resp. at p. 4-5).  Title 18 § 3500 refers

9

only to statements "of the witness" (emphasis added), not statements of the government's regarding consideration. The government's attempt to evade *Brady/Giglio* and prevent a thorough pretrial investigation of its dealing with witnesses is unlawful.[4] See *United States v. Kojayan*, 8 F.3d 1315, 1325 (9th Cir. 2008) (chastising federal prosecutors for failing to disclose arrangements with witness); *United States v. Chapman*, 524 F.3d 1073, 1090 (9th Cir. 2008) (upholding dismissal of indictment where government failed to produce impeach matter prior to trial).

## II. No Evidence of Undue Risk to Witnesses Has Been Provided to Justify Non-Disclosure

In another attempt to deny pretrial disclosure, the government alleges that specific disclosure of evidence would present an undue risk to witnesses so disclosure was not appropriate in the case. However, the government presents no facts for this allegation and the discovery produced thus far does not support such a premise. At the present, there exist no specific case facts known to the defense to establish disclosure would create undue risk of witness safety. Defendant and his co-defendants are in custody. This is neither a RICO nor or a VICAR case, no group or enterprise is charged. The lack of any enterprise or group allegations is, of course, germane to any future claim of undue risk of witness safety by disclosure. It seems self-evident that if the term "critical stage" is given a common sense meaning it includes the adversarial process where the decision is made as to whether the penalty of death is sought or not sought. However, if the government has safety concerns, it should seek a protective order that would enable it to comply with its obligations under *Brady* and Rules 12 and 16.

---

[4] That the government's position is untenable is demonstrated by considering the impeachment material prejudicially withheld in *United States v. Bagley*, 473 U.S. 667 (1985). The government failed to disclose inducements offered to prosecution witnesses. There is no suggestion that the *Jencks* Act, enacted a quarter of a century earlier, limited the government's responsibilities.

10

As previously noted, an individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf on a case, including the police. *Kyles v. Whitley*, 514 U.S. 419, 432-434 (1995).

### III.     The Court Should Order Early Disclosure Pursuant to 18 U.S.C. § 3432

#### A.     Early Production of Witness List and Summaries is Essential to Defense Ability to Prepare

The government asserts that it is not required to, and will not provide the defense with a witness list until three days before the commencement of trial. Resp. at p. 14.  Providing witness lists well in advance of trial is routine in capital cases. As shown by the government's response, the government is taking an extraordinarily hard line.

This Court has the authority to order the government to produce a witness list so that the defense may prepare for trial. *United States v. W.R. Grace*, 526 F.3d 499, 509-10 (9th Cir. 2008) (en banc).  The court in Grace reasoned, "Although Rule 16 does not expressly mandate the disclosure of nonexpert witnesses, it is not inconsistent with Rule 16 for a court to order the government to produce a list of such witnesses as a matter of its discretion." 526 F.3d at 510. Section 3432 of Title 18, and its three-days-before-trial requirement was enacted at a time before the advent of modern death penalty litigation. The complexities of contemporary practice, including the professional norm requiring defense counsel to interview and investigate prosecution witnesses, makes it appropriate for the Court to order the production of a witness list at the earliest possible date.   The government presents no grounds for the court to refuse to order early disclosure.

The government objects to providing information not specifically identified in 18 U.S.C. § 3432 on the grounds that the statute does not require it.  Mr. Temple's request was made pursuant to constitutional rules.  Summaries or other indications of what witnesses will testify to

11

are essential to defense counsel's ability to prepare for trial.  Similarly, Mr. Temple's request for identifying information regarding witnesses is essential.  Mere names alone provided three days before trial will leave Mr. Temple's counsel unable to investigate witnesses before they testify.  Counsel will have to request a continuance before cross-examination where pretrial discovery does not give him notice of a witness's evidence and role in the case.

The government repeats its claim that impeachment material need not be disclosed prior to trial.  For the reasons previously stated, the government's position is contrary to Supreme Court law.

## IV. The Court Should Reject the Government's Attempt to Limit the Scope of Discovery under Rule 16 and *Brady*

Mr. Temple has requested a variety of discovery that is material to his preparation of any defense.  The government largely contends these items are not discoverable for various reasons.  The government is wrong in each instance.  As previously noted, Rule 16 is not a prohibition to discovery but a beginning point that represents the minimum amount of discovery to which parties are entitled.  It is not intended to limit the judge's discretion to order broader discovery.

It is impossible for Mr. Temple to prepare a defense to a prosecution case based on physical evidence, for example, unless he knows the identity and job title of the witnesses the government will rely upon to establish a chain of custody and authenticity.  Yet the government opposes even this routine request.

The government represents to the Court it has provided discovery as represented in Exhibit "1" attached to their Response.  However, the government fails to represent to the Court most of the substantive information contained in the bate-stamped pages of discovery provided has been redacted.  *See* Exhibit "A" to this Reply.  (Because Exhibit "A" contains approximately

12

100 pages of St. Louis Metropolitan Police Department Incident Reports that are redacted, counsel for defendant will produce Exhibit "A" at the hearing on this motion).

It would be a mistake for the Court to find that Exhibit "1" provided by the government is an accurate and true representation of disclosure provided by the government at this stage in the proceedings. Government Exhibit "1" fails to advise the Court of the redacted portions of the bate-stamped pages referenced in the government's Exhibit "1". Defense Exhibit "A" will demonstrate how the government's Exhibit "1" could be misleading.

As the Supreme Court said in *Kyles*, the duty to disclose is triggered by the character of the evidence, *viz.* that it is favorable to the defense and, when viewed cumulatively with all other favorable evidence in the government's possession, is material. The government has passed that threshold and may not withhold documents based on who made a statement even if it is a statement of a testifying prosecution witness.

The government objects to providing identifying information about, and documentation related to, those involved in the defendant and co-defendants' arrests as well as the search conducted for items attributable to the defendant. For the reasons previously stated, if the evidence in the government's possession falls within the scope of *Kyles* or Rule 16(a)(1)(E), the government's objection should be overruled and production should be ordered.

In his discovery motion, Mr. Temple requested the production of evidence showing whether, and to what extent, any item of evidence has been lost or destroyed. The government contends this request "goes beyond the scope of discovery." The unexplained loss or destruction of evidence may be viewed by jurors as an indication that the lost or destroyed item would have been helpful to the defense.

13

### V.  The Court Should Grant Mr. Temple's Request For Reports of Examination and Tests and Summaries of Expert Witnesses Testimony

The government contends Mr. Temple's requests are "beyond the scope of any obligation placed on the government by rule or statute."  Each section of Mr. Temple's motion incorporated by specific reference the law relied upon in every other section.  To the extent the materials requested are discoverable under *Brady* and its progeny, as currently viewed by the Supreme Court, or by Rule 16(a)(1)(E), the motion should be granted.

### VI.  Conclusion

Denial of defendant's motion for discovery will violate the defendant's right guaranteed by the Fifth, Sixth and Eighth Amendments to the Constitution of the United State of America.  Accordingly, counsel for Mr. Temple request the Court to order the government to produce the requested materials after the Court has heard argument on the motion.

Respectfully submitted,

*/s/ Joseph L. Green*
JOSEPH L. GREEN #36331MO
Attorney for Defendant
#1 McBride and Sons Center Drive, Suite 225A
Chesterfield, MO 63005
(636) 532-6600
Facsimile (636) 532-6602
joe@josephgreenlaw.com


*/s/ Daniel A. Juengel*
DANIEL A. JUENGEL #42784MO
Co-Counsel for Defendant
7710 Carondelet Avenue, Suite 350
Clayton, MO 63105
(314) 725-7777
djuengel@fjrdefense.com

## CERTIFICATE OF SERVICE

  I hereby certify that on January 7, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Thomas Rea
Assistant United States Attorney
111 South 10th Street, 20th Floor
St. Louis, MO 63102

              *Joseph L. Green*
              Joseph L. Green

## DECLARATION OF COUNSEL

  I declare that the factual averments in the foregoing motion and the attached memorandum of points and authorities are true and correct and based on my personal knowledge.  Subscribed to by me this 7th day of January, 2016.

              */s/ Joseph L. Green*
              Joseph L. Green