UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S1-4:15 CR 230 JAR (JMB) |
| | ) |
| JACOBI R. TEMPLE, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION OF**
<u>**UNITED STATES MAGISTRATE JUDGE – MOTION TO DISMISS**</u>[1]

Currently before the Court is a Motion to Dismiss Counts Two, Four, Five, and Six of the Superseding Indictment ("Motion to Dismiss") (ECF No. 224), filed on behalf of Defendant Jacobi R. Temple (hereinafter "Defendant" or "Temple"). In his Motion to Dismiss, Temple argues that the superseding indictment is multiplicitous in several respects. More specifically, Temple contends that: (1) Count Two[2] should be dismissed because it involves the same, single act of firearm possession as charged in Counts Three, Four, and Five; (2) Counts Four and Five should be dismissed as multiplicitous with Count Three because each count relies on the same predicate offense (conspiracy to distribute heroin); and (3) Count Six should be dismissed because it charges the same criminal acts alleged in Count One.

Temple filed a detailed memorandum in support of his Motion to Dismiss. (ECF No. 224) The Government has filed a response in opposition. (ECF No. 266) Temple thereafter filed a reply to the Government's response in opposition. (ECF No. 298) Although the

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

[2] The Government voluntarily dismissed Count Two, but did not concede that it was multiplicitous. (ECF Nos. 265, 268) Temple's arguments concerning Count Two are moot.

-1-

undersigned held several evidentiary hearings on Temple's suppression motions, the parties agreed that no evidentiary hearing was necessary to resolve Temple's Motion to Dismiss. The undersigned will issue a separate Report and Recommendation regarding the suppression motions when those motions have been fully briefed and heard.

Having fully considered the parties' arguments and the relevant case law, and for the reasons stated below, the undersigned recommends that the Court **deny** Temple's Motion to Dismiss. (ECF 224)

## RELEVANT PRODECURAL BACKGROUND

On May 12, 2015, Temple was charged by criminal complaint with one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1) On May 13, 2015, the Grand Jury returned a one-count indictment, again charging Temple with one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841. (ECF No. 5) On July 15, 2016, the Grand Jury returned a multi-count superseding indictment. The superseding indictment added several, serious charges, as well as two co-defendants—Demante Syms and Samuel Spires.[3] (ECF No. 30)

Count One of the superseding indictment charges Temple, Syms, and Spires with conspiracy to distribute heroin, in violation of 21 U.S.C §§ 846 and 841. Count Two charges Temple, Syms, and Spires with conspiracy to possess one or more firearms, including a Colt .45 caliber semi-automatic pistol, in furtherance of the heroin conspiracy charged in Count One. Count Two further alleges, among other things, that: (1) in or around August 2014, the three co-defendants entered into an agreement to distribute heroin in the City of St. Louis; (2) from August 2014 until March 27, 2015, they distributed heroin in the City of St. Louis; and (3) as

---

[3] Syms and Spires have since pleaded guilty and are awaiting sentencing. (See, e.g., ECF Nos. 153, 217)

part of the agreement, each defendant understood that Temple would be armed with a firearm. Count Three alleges that, on or about March 27, 2015, Temple "did knowingly possess, brandish and discharge one or more firearms" in furtherance of the conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A), and in the course of the violation, Temple caused the death of James Lacey. Count Four alleges that, on or about March 27, 2015, Temple "did knowingly possess, brandish and discharge one or more firearms" in furtherance of the conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A), and in the course of the violation, Temple caused the death of Paige Schaefer. Count Five alleges that, on or about March 27, 2015, Temple, Syms, and Spires, acting together, "did knowingly possess, brandish and discharge one or more firearms" in furtherance of the conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A), and in the course of the violation, the defendants caused the death of Tammie Thurmond. Count Six alleges that, on or about April 24, 2015, Temple knowingly and intentionally possessed, with the intent to distribute, heroin, in violation of 21 U.S.C. § 841.

Counts Three, Four, and Five allege crimes that carry a potential death penalty, pursuant to 18 U.S.C. § 924(j). As a result of that potential punishment, and in consideration of additional factors and with the agreement of the parties, the undersigned designated this matter as a complex case within the parameters of the Speedy Trial Act. (ECF No. 60) On May 31, 2016, the Government filed its notice that it would not seek the death penalty. (ECF No. 125) On October 3, 2016, however, the Government filed an amended notice with the Court, noting that, in view of changed circumstances and additional information, the capital crime review process regarding Temple (but not Syms or Spires) had been re-opened. (ECF No. 177) On November 8, 2016, the Government filed a notice indicating that it would not seek the death penalty against

Temple. (ECF No. 192) Counsel for the Government has represented to the Court that the Government's decision relative to the death penalty is now final.

## DISCUSSION OF ISSUES PRESENTED

### I.   Multiplicity

Temple's Motion to Dismiss alleges that various counts in the superseding indictment are multiplicitous. "An indictment is multiplicitous if it charges the same crime in two counts." United States v. Chipps, 410 F.3d 438, 447 (8th Cir. 2005); see also United States v. Sandstrom, 594 F.3d 634, 651 (8th Cir. 2010) (quoting same). "The rule against multiplicitous prosecutions is based on the Fifth Amendment's Double Jeopardy Clause, which 'protects against multiple punishments for the same offense.'" United States v. Hinkeldey, 626 F.3d 1010, 1013 (8th Cir. 2010) (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)). "Where … an indictment includes more than one count charging the same statutory violation, the question is whether Congress intended the facts underlying each count to constitute a separate unit of prosecution." Id. (citing Chipps, 410 F.3d at 447). "A unit of prosecution is 'the aspect of criminal activity that Congress intended to punish.'" Id. (quoting Chipps, 410 F.3d at 448). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockberger v. United States, 284 U.S. 299, 304 (1932).

### II.   Analysis of Issues Raised in Motion to Dismiss

#### A.   Motion to Dismiss Count Two

As noted above, the Government voluntarily dismissed Count Two. Thus, Temple's contentions regarding Count Two are now moot.

B.     **Motion to Dismiss Counts Four and Five**

Temple next contends that Counts Four and Five must be dismissed as multiplicitous with Count Three. The heart of Temple's argument is that, because Counts Three, Four, and Five charge the same statutory violation, 18 U.S.C. § 924(c)(1)(A), and rest on the same predicate offense, namely conspiracy to distribute heroin as alleged in Count One, the counts are multiplicitous. The Government counters that Counts Three, Four, and Five charge distinct offenses, based on different uses of the same firearm to kill three different persons. The Government argues that Counts Three, Four, and Five satisfy the Blockberger test, and Congress intended for each murder to be punished separately. Thus, according to the Government, using a single drug trafficking conspiracy to support multiple uses of a firearm in furtherance thereof does not run afoul of the Double Jeopardy Clause.

Counts Three through Five each charge that Temple

> did knowingly possess, brandish and discharge one or more firearms, including a Colt make, 1911 model, .45 caliber semi-automatic pistol bearing serial number 1649159, in furtherance of a drug trafficking crime which may be prosecuted in a court of the United States; to wit: conspiracy to knowingly and intentionally distribute heroin, as charged in Count One herein….

What differentiates Counts Three, Four, and Five is that each count also alleges a distinct use of the firearm to murder a specific individual.[4] For example, Count Three alleges as follows:

> And in the course of this violation [of 18 U.S.C. § 924(c)(1)(A)] caused the death of James Lacey through the use of the firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111, in that the defendant, with malice aforethought, unlawfully killed James Lacey; by shooting him with the firearm, willfully, deliberately, maliciously, and with premeditation, thereby making this offense punishable under Title 18, United States Code, Section 924(j)(1).

---

[4] Counts Three and Four charge only Temple, while Count Five charges Temple, Syms, and Spires "acting together." This distinction is not particularly relevant for purposes of evaluating Temple's multiplicity arguments.

-5-

Counts Four alleges that Temple caused the death of Paige Schaefer through the use of the firearm, and Count Five alleges that Temple caused the death of Tammie Thurmond through the use of the firearm.

In support of his motion to dismiss Counts Four and Five, Temple contends that, in order to charge separate § 924(c)(1)(A) violations, the Government must allege separate predicate offenses. According to Temple, "the Government is required to prove for each §924(c)(1)(A) violation that Defendant Temple committed separate crimes of drug trafficking to uphold multiple convictions under §924(c)(1)(A)." (ECF No. 224 at ¶ 17) Temple contends that, "[n]early every federal circuit has held that §924(c)(1)(A) requires the Government to prove a separate crime of violence or drug trafficking crime." (ECF No. 224 at ¶ 15) Temple cites cases in the Second, Third, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits in support of his premise. See, e.g., United States v. Lindsay, 985 F.2d 666 (2d Cir. 1993), United States v. Diaz, 592 F.3d 467 (3d Cir. 2010); United States v. Privette, 947 F.2d 1259 (5th Cir. 1991); United States v. Henry, 878 F.2d 937 (8th Cir. 1989); United States v. Cappas, 29 F.3d 1187 (7th Cir. 1994); United States v. Smith, 924 F.2d 889 (9th Cir. 1991); United States v. Johnson, 977 F.2d 1360 (10th Cir. 1992); United States v. Hamilton, 953 F.2d 1344 (11th Cir. 1992).[5]

---

[5] Temple's cases are not specifically on point and distinguishable from his case. As will be discussed below, in United States v. Curtis, 324 F.3d 501, 508 (7th Cir. 2003), the Seventh Circuit distinguished its decision in Cappas and similar cases from other circuits which did not specifically address charges under § 924(j). The Seventh Circuit's distinction is relevant in this case because Counts Three through Five allege separate violations under § 924(j).
Temple also relies on United States v. Rentz, 777 F.3d 1105 (10th Cir. 2015) (en banc). Rentz is also distinguishable. Rentz involved a rather unique fact pattern in which the defendant "'used his gun only once but did so 'during and in relation to' two separate 'crimes of violence'—by firing a single shot that hit and injured one victim but then managed to strike and kill another." Id. at 1107. The Government's position in Rentz was that the single use could give rise to multiple charges, a position that a majority of the Tenth Circuit rejected. See id. at 1110-11, 1115.

Further, according to Temple, "[t]he fact that the Government alleges multiple murders is not relevant …. The fact that the firearm was brandished, discharged, or that the discharge resulted in death are sentencing components and enhancers to be applied if the Government can establish those additional facts to a jury. They should not be used to seek independent counts against the Defendant." (ECF No. 224 at ¶ 18) Thus, according to Temple, even assuming the Government proves that Temple used the firearm more than once, the Government "must also have multiple varying predicate offenses underlying each §924(c) charge in order to sustain multiple convictions." (ECF No. 224 at ¶22) Temple also argues, however, that, "[i]n cases involving a singular possession of a firearm, most circuits have held that the government must also prove separate uses or possession of a firearm in order to be able to charge a defendant" with multiple § 924(c)(1)(A) violations. (ECF No. 224 at ¶ 20) Thus, the heart of Temple's argument is that the unit of prosecution for a § 924(c)(1)(A) violation requires each use (or possession) to be distinct and in furtherance of a distinct predicate offense.

Temple's arguments are foreclosed by a line of Eighth Circuit cases beginning with United States v. Lucas et al, 932 F.2d 1210 (8th Cir. 1991). Lucas involved a defendant charged with, among other things, possession with intent to distribute crack cocaine, and two counts of using a firearm in relation to drug trafficking. Id. at 1213, 1221-22. The two firearms charges referred to the same predicate drug trafficking offense. In Lucas, the firearms were found in the defendants' residence, but were possessed for different purposes relative to drug trafficking— one count involved guns used to protect the defendant, his family, his drug money, and his personal use drugs, while a different gun was used to protect his drug lab and inventory. Id. at 1223.

The Eighth Circuit specifically considered and rejected the defendant's argument that "one predicate offense may give rise to only one section 924(c) offense, regardless of the number of separate firearm uses that relate to that predicate offense." Id. at 1222.  In so doing, the Court considered many of the same cases Temple relies on herein.  See id.  The Court found those cases inapposite because those cases did not address the more specific "question of whether distinct uses of firearms likewise can support separate 924(c) convictions where the uses do not relate to distinct predicate acts." Id. (emphasis in original)  Referring to Blockberger,[6] the Court concluded that the defendant's "separate uses constitute separate 'impulses' in the Blockberger sense, and therefore that these separate uses properly support separate section 924(c) charges, even though both of the charges relate to the same predicate offense." Id. at 1223.  The Court further emphasized –

> Buttressing our holding is the clear design of section 924(c) to deter individual uses of firearms rather [than] firearm use as a course of action.  Section 924(c) seeks "[t]o persuade the man who is tempted to commit a federal felony to leave his gun at home." Rawlings, 821 F.2d at 1546 (quoting … 114 Cong.Rec.22231

---

[6] In this aspect of Blockberger, the Supreme Court was addressing two charges involving the same statutory violation.  See Blockberger, 284 U.S. at 301.  The defendant in Blockberger was convicted of two violations of Section 1 of the Narcotics Act and one violation of Section 2 of that Act.  Id. at 301, 303-04.  The Supreme Court affirmed all of the convictions.  Regarding the two Section 1 convictions, the Court explained as follows that the unit of prosecution was each sale:
> Each of several successive sales constitutes a distinct offense, however closely they may follow each other.  The distinction … is that, when the impulse is single, but one indictment lies, no matter how long the action may continue.  If successive impulses are separately given, even though all unite in a common stream of action, separate indictments lie….  The test is whether the individual acts are prohibited or the course of action which they constitute.

Id. at 302 (internal quotations and citations omitted).

Blockberger is more famously cited for its consideration of the distinction between a defendant's convictions for violating both Section 1 and Section 2 of the Narcotics Act.  It is in that aspect of the decision that the Supreme Court stated "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304 (citation omitted).

> (1968)).  If section 924(c) were interpreted as subsuming individual firearm uses within an overall course of action involving the use of a firearm, its ability to "persuade" a wrongdoer "to leave his gun at home" would be limited to that group of drug traffickers and violent criminals who never "used or carried" a firearm in relation to their crime.  Such a result would be at odds with the essential purpose of section 924(c).

Id. (emphasis supplied).  The Court clearly held that "each separate use of a firearm in relation to a violent crime or drug trafficking crime is punishable under section 924(c) regardless of whether other section 924(c) charges are related to the same predicate offense."  Id.

Despite the relatively clear holding in Lucas, the facts of Lucas are at least arguably distinguishable from Temple's case because Lucas involved two sets of firearms while Counts Three, Four, and Five all allege the same .45 caliber pistol.  A later case from the Eighth Circuit, however, eliminates any doubt as to whether this distinction is sufficient to remove Counts Three, Four, and Five of Temple's indictment from the otherwise clear holding in Lucas.  In United States v. Hoover, 543 F.3d 448 (8th Cir. 2008), the Eighth Circuit applied its holding in Lucas to a factual scenario that is, for present purposes, substantially indistinguishable from Temple's scenario.

The defendant in Hoover used a single firearm to shoot and kill two men in an apartment, all in relation to drug trafficking activity.  Id. at 450.  The defendant was charged with two counts of using a firearm in connection with a drug trafficking offense, in violation of § 924(c)(1), resulting in the deaths of the two men.  Id.  The defendant argued that the indictment was "multiplicitous because it charge[d] a single offense in separate counts," in violation of the Double Jeopardy Clause.  Id. at 455.  Relying on Lucas, the Eighth Circuit found the defendant's argument lacked merit, noting that "[w]e have previously held that each separate use of a firearm in relation to a drug trafficking crime is punishable under 18 U.S.C. § 924(c) regardless of whether another charge under the same statute is related to the same predicate offense."  Id.  The

-9-

Court elaborated by explaining that, "under the test set forth in Blockberger v. United States, 284 U.S. 299, 304 (1932), [the defendant] is not subject to double jeopardy because each count requires proof of an element not required by the other." Id. at 455-56. In particular, each count required the Government to prove the killing of a different person. Id. at 456.

In addition to Lucas and Hoover, the Eighth Circuit has applied the same principle in other reported decisions. In United States v. Canterbury, 2 F.3d 305, 306 (8th Cir. 1993), the police found two handguns in the defendant's house, each in a different location but both near drugs. The defendant was charged with drug trafficking and two § 924(c) counts. Prior to trial, and without the benefit of an evidentiary hearing, the district court held that the single drug offense would not support both § 924(c) charges. The Eighth Circuit reversed. The Court explained that, "[w]hat distinguishes one offense from another and gives them separate legal identities is the 'use' attributed to the firearm: each separate use of a firearm constitutes a separate offense, even where there is only one predicate drug-trafficking crime." Id. (citing Lucas). The Court reasoned that, the dismissal of one of the § 924(c) counts before trial was premature. "As a matter of pleading, the indictment was sufficient to allege two separate offenses. The Government should be allowed to put on its proof, and if it can carry its burden, then the charges stand; if it cannot, then the usual motions are still available to [the defendant], such as a motion for a directed verdict." Id.[7]

---

[7] Canterbury can also be read as limiting the Court's prior decision in United States v. Freisinger, 937 F.2d 383 (8th Cir. 1991). Freisinger was decided after Lucas, but arguably ventured one step beyond Lucas, and would permit multiple § 924(c) charges based on multiple gun possessions linked to a single drug trafficking charge, even if the gun possessions did not amount to "separate uses." See Canterbury, 2 F.3d at 307 (Lay, J., concurring) (declining to endorse Freisinger, which "seems to authorize prosecution for each firearm a defendant possesses during and in relation to a single crime of violence or drug trafficking regardless of whether there is proof of a separate use"). Thus, Canterbury clarified that the separate use of a weapon is a necessary unit of prosecution for a § 924(c) charge.

-10-

In Hamberg v. United States, 675 F.3d 1170 (8th Cir. 2012), the Eighth Circuit confirmed the continuing viability of its holding in Lucas, albeit in the context of a motion under 28 U.S.C. § 2255.  The defendant in Hamberg was convicted of one drug trafficking charge and two counts of using a firearm during a drug trafficking crime, in violation of § 924(c)(1)(A).  Id. at 1171. As a result, Hamberg was sentenced to 276 months on the drug count, 84 months on the first § 924(c) count, and 300 months on the second § 924(c) count, with all sentences to be served consecutively.  Id.  In his post-conviction motion, Hamberg argued that his attorney was ineffective because a single drug offense could not be used to support multiple § 924(c) charges. Id. at 1172.  In making his ineffective assistance claim, Hamberg noted that a circuit split has developed on the question of "whether a single underlying drug offense can support multiple convictions for use of a firearm in furtherance of the drug offense."  Id.  The Court acknowledged the circuit split and that a majority of the circuits reached a different conclusion. Id. at 1172 n.2.[8]  Nonetheless, the Court reiterated that Lucas "is controlling precedent in this circuit."  Moreover, Hamberg was properly charged with two violations of § 924(c) because he "used the firearm in two different places, threatening and assaulting two different victims, and for two different, although related, purposes."  Id. at 1173.

The Government's arguments in its response to Temple's Motion to Dismiss focus on the Seventh Circuit's decision in United States v. Curtis et al., 324 F.3d 501 (7th Cir. 2003).  In Curtis, the defendants were charged with, inter alia, conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846, and "two counts of the use of a firearm to commit murder in furtherance of a drug trafficking conspiracy for two separate killings in violation of 18 U.S.C. §

---

[8] The Court correctly noted, however, that the Fourth Circuit's precedent is aligned with that of the Eighth Circuit.  See Hamberg, 675 F.3d at 1172 n.2 (citing United States v. Camps, 32 F.3d 102, 108-09 (8th Cir. 1994)).

924(c) and (j)." Id. at 503. Both § 924(c), (j) charges relied on the same predicate drug trafficking conspiracy. See id. at 507. Like Temple, the defendants in Curtis argued that "multiple § 924(j) convictions based on a single § 924(c) violation committed in the course of one drug trafficking offense violate the double jeopardy clause." Id. The Seventh Circuit rejected this argument. First, the Seventh Circuit distinguished its prior decision in Cappas.⁹ The court then applied a standard Blockberger analysis, and concluded that each § 924(j) count required proof that another count did not, namely separate murders. Thus, the Seventh Circuit found no double jeopardy violation.

In view of the long-standing and unambiguous precedent in this Circuit, as well as the Seventh Circuit's analysis in Curtis, Temple's motion to dismiss Counts Four and Five as multiplicitous with Count Three cannot be sustained. Counts Three, Four, and Five each involve a separate use of a firearm, within the meaning of Lucas, as interpreted and applied in Hoover, Canterbury, and Hamberg. Using the language of Blockberger, each count requires the Government to prove "separate impulses," even if all of the actions "unite in swelling a common stream of action." Blockberger, 284 U.S. at 302; see also Lucas, 932 F.2d at 1222-23. Thus, like

---

⁹ As noted above, Temple's argument relies, in part, on Cappas. The Seventh Circuit distinguished, and for § 924(j) purposes, diminished the entire line of cases upon which Cappas rests. The Seventh Circuit explained –
> Cappas and similarly decided cases from other circuits address an entirely different problem than the one we face here. In that line of cases, the courts focused on the imposition of multiple § 924(c)(1) convictions … even if the gun was carried or used in the same place and at the same time…. [The Curtis case] has to do with the elements of a § 924(j) case, and whether the fact that a single element of one § 924(j) count also plays a part in a separate conviction (for § 924(j), or for that matter for a conviction under any other statute) amounts to a violation of the Double Jeopardy Clause.

Curtis, 324 F.3d at 508 (internal citations and quotations omitted).

the situation in Canterbury, at this pretrial stage it would be premature to dismiss Counts Four and Five before the Government has the chance to prove separate uses of the firearm.[10]

Accordingly, Temple's motion to dismiss Counts Four and Five should be denied.

### C. Jury Pool Considerations

In his Reply, Temple raises an issue that he did not present in his Motion to Dismiss. In essence, Temple suggests that, by charging Temple with murder federally, the Government is depriving Temple of an allegedly more favorable jury pool available in the City of St. Louis. Temple offers no legal support for his argument. Furthermore, even if Temple could convince the Eighth Circuit to overrule its precedent and limit the Government to prosecuting Temple for only one of the murder charges under § 924(c), (j), the Government would still be permitted to proceed in federal court on that one charge. Finally, Temple's jury pool argument was raised for the first time in his reply. Thus, even though it is without merit, it is also untimely and waived. Temple's jury pool argument should be rejected.

### D. Motion to Dismiss Count Six

Temple also asks the Court to dismiss Count Six because it "attempts to charge Defendant Temple for the same criminal acts alleged in Count [One]." (ECF No. 224 at 9) Temple argues that Count Six reflects the Government's attempt to "'stack' charges against

---

[10] Citing cases from circuits other than the Eighth Circuit, Temple also contends that "the rule of lenity would also favor dismissing Counts IV and V." (ECF No. 224 at ¶ 25; ECF No. 298 at 4-6) In view of more than twenty-five years of consistent Eighth Circuit precedent regarding the unit of prosecution for § 924(c) violations, beginning with Lucas, the undersigned cannot say that a "grievous ambiguity" exists in the statute to justify resorting to the rule of lenity in this matter. See United States v. Clawson, 408 F.3d 556, 558-59 (8th Cir. 2005) ("The rule of lenity only applies if there is a grievous ambiguity or uncertainty in the language or structure of the statute."). See also Muscarello v. United States, 524 U.S. 125, 138 (1998) ("The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree.").

Defendant and punish him for essentially the same act twice, namely possession of heroin for the purpose of distribution." (Id. at ¶ 27)  In his Motion to Dismiss as initially filed, Temple offers no legal authority in support of his motion to dismiss Count Six.[11]  In fact, Temple concedes that "the existing caselaw would tend to suggest that [Counts One and Six] are not multiplicitous." (Id. at ¶ 28)  Temple appears to suggest that he is being unfairly singled out because co-defendants Syms and Spires were not charged with heroin distribution, "even though all three co-defendants were alleged to be found with heroin when arrested." (Id.)

Temple is correct that existing case law does not support his argument that Count Six is multiplicitous with respect to Count One.  Count One charges conspiracy to distribute heroin, while Count Six charges the substantive offense of possession with intent to distribute heroin.  Moreover, Count Six alleges an offense date approximately one month after the drug trafficking conspiracy alleged in Count One.  Even if the substantive drug charge of Count Six occurred within the timeframe alleged in Count One, the result would be the same.  It is settled law that the commission of a substantive offense and the conspiracy to commit that offense are distinct, separately indictable charges.  See United States v. Singer, 660 F.3d 1295, 1303 (8th Cir. 1981) (rejecting multiplicity argument and explaining that "[i]t is firmly established that the

---

[11] In his Reply, Temple cites Jeffers v. United States, 432 U.S. 137 (1977) (plurality), for the proposition that an inquiry may still be made as to whether Congress intended to punish each statutory violation separately.  (ECF No. 298 at 8-9)  Jeffers is not applicable.  In Jeffers, the Court addressed double jeopardy concerns when a defendant was charged with violating 21 U.S.C. § 846 (drug conspiracy) and 21 U.S.C. § 848 (continuing criminal enterprise).  The Court noted that the "'essence of the crime of conspiracy is agreement.'"  Id. at 147 (quoting Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975)).  The Court then construed the "in concert with" requirement of § 848 "to have its common meaning of an agreement in design or plan."  Id. at 149.  Having thus construed both charges to require an agreement, the Court found § 846 to be a lesser included offense of § 848.

Temple's case does not present this issue because Count One charges a drug conspiracy, in violation of § 846, and Count Six charges a simple drug offense, in violation of § 841.  Count One requires proof of an agreement and Count Six does not.

commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses") (citations and quotations omitted); United States v. Graham, 548 F.2d 1302, 1310 (8th Cir. 1977) (noting that "[i]t is permissible and also customary to join a conspiracy count with separate substantive counts").

To the extent Temple's arguments raise a claim of vindictive prosecution, he has not met his burden. As a general matter, federal prosecutors possess broad discretion to initiate and conduct criminal prosecutions. See United States v. Armstrong, 517 U.S. 456, 464 (1996). This discretion extends to whether to bring charges, and what charges to bring, if charges are brought. See, e.g., United States v. Kelley, 152 F.3d 881, 886 (8th Cir. 1998) (noting that the decision to prosecute a defendant, but not an allegedly similarly-situated offender, was within prosecutor's discretion because probable cause existed to prosecute defendant); Parkhurst v. Tabor, 569 F.3d 861, 867 (8th Cir. 2009) (noting that decision of what charge to seek is within the prosecutor's discretion). This deference to the Government's prosecution decisions arises from separation of powers principles, and because courts are particularly ill-suited to reviewing prosecutorial decisions. See, e.g., Armstrong, 517 U.S. at 464 (holding that separation of powers requires broad prosecutorial discretion); Flowers v. City of Minneapolis, 558 F.3d 794 798 (8th Cir. 2009) (noting that the decision whether to prosecute is ill-suited to judicial review).

This prosecutorial discretion has limits; it violates the Due Process Clause for a prosecutor to engage in vindictive prosecution—to punish a defendant for exercising her statutory or constitutional rights. See United States v. Goodwin, 457 U.S. 368, 372 (1982). "Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right." United States v. Williams, 793 F.3d 957, 963 (8th Cir. 2015). "In order to demonstrate prosecutorial vindictiveness, a defendant must show that the superseding

indictment containing the additional charges was sought in retaliation for exercising constitutional or statutory rights." United States v. Chappell, 779 F.3d 872, 879 (8th Cir. 2015) (quoting United States v. Punelli, 892 F.2d 1364, 1371 (8th Cir. 1990)).

Nothing in the record before the undersigned suggests that the Government is seeking to punish temple solely for exercising a legal right. Accordingly, to the extent Temple's motion to dismiss Count Six can be read as claim of vindictive prosecution, that claim would fail.

For the foregoing reasons, Temple's motion to dismiss Count Six should be denied.

## CONCLUSION AND RECOMMENDATIONS

Accordingly,

**IT IS HEREBY RECOMMENDED** that Temple's Motion to Dismiss (ECF No. 224) be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Memorandum, Order, and Recommendation, unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

The trial of this matter will be set upon completion of pretrial proceedings. The undersigned will address Temple's various motions to suppress (see ECF Nos. 228, 229, 231) in a separate Report and Recommendation. The briefing regarding the motions to suppress is not complete.

/s/ ***John M. Bodenhausen***
UNITED STATES MAGISTRATE JUDGE

Dated this   17th   day of  July , 2017